[No. 23059. Department Two. July 20, 1931.]

*In the Matter of the Guardianship of* WILLIAM EDWARD MACNAIR *et al., Minors.*

GRACE MACNAIR WOODIE, *Respondent,* v. SEATTLE TRUST COMPANY *et al., Appellants.*[1]

[1]Reported in 2 P. (2d) 82.

*Lester E. Pope,* for appellants.

*Wettrick, Wettrick & Flood* and *McBurney & O'Brien,* for respondent.

TOLMAN, C. J.—This is an appeal by the officials of the United States veterans' bureau and by the guardian of the estates of certain minors from an order of the trial court making certain allowances from the corpus of the estates, the particulars of which will be hereinafter more fully set forth.

█ At the outset, we are met by a motion to dismiss the appeal of the Federal officials, upon the theory that they have no legal capacity to sue, are not parties in interest entitled to appeal, and that they have no authority under the laws of the United States or of this state to prosecute this or any like appeal.

Since the guardian has joined in the appeal, and may prosecute it if its co-appellants be dismissed out of the case, the question is here largely academic. Still, as the answer seems obvious, we may say that, as these officials have power and authority under the Federal statute to raise such questions in the trial court, we think they may appeal from an adverse decision and litigate the question to a final determination. The Federal statute (World War Veterans' Act, 38 U. S. C., § 450, as amended by the act of May 29, 1928, being chapter 875, 45 Stat. 964) provides:

"(2) Whenever it appears that any guardian, curator, conservator, or other person is not, in the opinion of the director, properly executing the duties of his trust or has collected or is attempting to collect fees, commissions, or allowances that are inequitable or are in excess of those allowed by law for the duties performed or expenses incurred, or has failed to make such payments as may be necessary for the benefit of the ward or the dependents of the ward, then and in that event the director is hereby empowered by his

duly authorized attorney to appear in the court which has appointed such fiduciary and make proper presentation of such matters to the court: *Provided,* That the director in his discretion may suspend payments to any such guardian, curator, conservator, or other person who shall neglect or refuse, after reasonable notice, to render an account to the director from time to time showing the application of such payments for the benefit of such minor or incompetent beneficiary.

"Authority is hereby granted for the payment of any court or other expenses incident to any investigation or court proceeding for the appointment of any guardian, curator, conservator, or other person legally vested with the care of the claimant or his estate or the removal of such fiduciary and appointment of another, and of expenses in connection with the administration of such estates by such fiduciaries, when such payment is authorized by the director."

Clearly, it is here contended that the guardian of the persons of the minors who sought and obtained the allowance here in issue was thus "attempting to collect . . . allowances that are inequitable . . .," and, if authorized in the first instance to contest such an allowance, the officials have sufficient interest to permit them to appeal. *National Association of Creditors v. Grassley,* 159 Wash. 185, 292 Pac. 416. The motion to dismiss is denied.

The appellant The Seattle Trust Company, a corporation authorized to conduct a trust business and to act as guardian under the laws of this state, was in June, 1927, duly appointed as guardian of the estates of William E., Shirley Margaret, and Dorothy Isabelle MacNair, the minor children of an ex-service man who died from a disability due to military service, the children being entitled to compensation on account of his death. The guardian duly qualified as such and has at all times since continued to act. All of the now available property, assets and estates of the minors

received by the guardian consists of moneys received from the government through the United States veterans' bureau as such compensation.

Grace MacNair Woodie, the mother of these children, was, at about the same time, by the same court appointed guardian of the person of each of them.

Some time before the appointment of either the guardian of the estates or the guardian of the persons, and during the summer of 1926, the two older children were by the mother permitted to go to the state of Massachusetts in the care and custody of a paternal aunt for a visit only, as the mother now contends. But in any event, the two children were in Massachusetts when our court undertook to appoint the mother guardian of their persons, and have at all times since remained there in the custody of the aunt. At some time, whether before or after the appointment of the guardians here, the aunt appears to have taken some action in the probate court of Massachusetts, through which she now claims to be the legal guardian of the persons of these two children who are in her custody. The record here, however, discloses nothing beyond what has been suggested; hence the rights of the aunt, if any, or the rights of the mother, as the natural guardian or the guardian of the persons by appointment, can not here be determined.

The record does disclose that the mother, through correspondence, has wholly failed to secure the return of the children to her or to this jurisdiction; that she has made two personal trips to Massachusetts, has there unsuccessfully petitioned the probate court for a return of the children to her; but the nature of these proceedings and their binding effect are wholly undisclosed by the record.

These two personal trips to Massachusetts were each undertaken with the express approval of the lower

court, and allowances from the minors' estates were made to the mother, over the objection and protest of the veterans' bureau officials, aggregating upwards of five hundred dollars. The last of these trips to Massachusetts was made in October, 1929; and included in the itemized expenses for that trip is an attorney's fee of one hundred dollars, indicating a serious attempt to present the legal questions to the Massachusetts court. These efforts being without results, on May 7, 1930, the mother and guardian of the persons made her third and the present application for allowances to finance another personal trip to Massachusetts in the attempt to gain the custody of her children. In her petition, among other things, she alleges:

"That on the 15th day of June, 1926, Mrs. John Strickland, mother of Orlando MacNair's brother-in-law, requested permission of your petitioner to take the two other children, William E. and Shirley Margaret, to the home of their aunt, a sister of the said Orlando MacNair, Mrs. John Strickland, Jr., who resides at 92 Montclair avenue, Roslindale, Massachusetts; that your petitioner granted permission for the visit on the condition and under the express and definite instruction that the children be returned to your petitioner in September of that year in time for the opening of school, and that the said Mrs. John Strickland, Jr., agreed to do so, but that she failed and neglected to do so notwithstanding that your petitioner made prompt and vigorous demand for their return.

"That your petitioner has since made two trips to Massachusetts to recover her said children, but has been unable to compel the said aunt to surrender the children. That your petitioner has never voluntarily relinquished the care, custody and control of said minor children, and that she has made every effort at her command to recover the said children. . . .

"That your petitioner has contributed, set over and conveyed to the Seattle Title Trust Company property worth approximately the sum of $2500 in trust for the said children, and that the said trustee has in its hands

funds from other sources belonging to the estate of the said children.

"That your petitioner longs for her children and feels it her duty to return to Massachusetts and make an effort to recover them and desires to do so immediately upon the conclusion of the current school term on or about the 1st of June of this year, and that she intends to make the trip to Massachusetts for the purpose of recovering her children and for no other purpose. That her personal funds are depleted by reason of the trust fund heretofore mentioned wherein she conveyed her personal funds to the Seattle Title Trust Company in trust for her children but that there are ample funds in the estate of the children under the jurisdiction of this court to enable her to make this trip, and that the allowance of a sufficient fund for this purpose would and does constitute an expenditure for the best interest and welfare of the children which would enable the children to make their home with their natural mother and would tend to effectuate the orders of this court with respect to the care and custody of the said minor children."

The officials of the veterans' bureau, through their regional attorney, filed an elaborate answer and objection to this petition; a hearing was had; the court made exhaustive findings of fact, reciting in great detail the facts which we have hereinbefore briefly indicated; and further found:

"That Grace MacNair Woodie is a fit and proper person to have the care, custody, control and possession of her minor children and that her husband, George H. Woodie, is likewise a fit and proper person to have the care, custody, control and possession of the said minor children and is able, willing and anxious to provide for them an adequate and a competent home under proper and suitable surroundings.

"That Grace MacNair Woodie has not *sufficient* funds of her own with which to finance a trip to Boston to recover the children or to prosecute a legal action in the courts of Massachusetts for that purpose but

that she has conveyed the rest, remainder and residue of all of her sole and separate property to the Seattle Trust Company in trust for the said children and that the Seattle Trust Company are holding as such trustee real property worth approximately $2500.

"That there are ample funds under the jurisdiction of this court in the estate of the said children to permit the allowance of $250 to the mother to aid her in making the trip to Massachusetts to acquire the control, custody and possession of her children; that such a trip is in the interest of and would constitute a benefit to the said children and that the purpose of the trip, namely that of returning the children to the home of their mother, is one which is for the welfare and benefit of the said children and will inure and redound to their best interest."

And the formal order followed directing the guardian of the estates to pay to the mother the sum of $250 to be used by her in partial payment and partial reimbursement of expenses to be incurred in making a trip to Massachusetts to recover the custody of the two minors. It is from this order that the appeal is prosecuted.

Much as we sympathize with the mother in her desire to have the custody of her children, and greatly as we appreciate the desirability of re-uniting the family, we can see here no reasonable hope of attaining such results by the expenditure now sought.

It is apparent that the children, wherever their domicile may have been, were absent from the state of Washington when the guardian of their persons was appointed, and were physically present in Massachusetts when the courts of that state assumed jurisdiction. We must assume that, before the courts of Massachusetts assumed jurisdiction, there was a sufficient showing made that the children were there domiciled. If that showing was false, the judgment of the Massachusetts court can only be attacked on the ground of

fraud or something of like nature. Apparently two attempts in that direction have been already made unsuccessfully, and there is absolutely no showing here that another attempt would meet with better success. Perhaps, if the petitioner had more fully informed herself as to the record in the Massachusetts court and had set forth clearly in her petition just what the situation there is, and had pleaded the possession of sufficient evidence to warrant a belief that she can now successfully attack and set aside the Massachusetts judgment under which the aunt holds custody of the children, a different result might be reached. But so far as the facts now appear, the continued expenditure of money will bring only continued failure to accomplish what the mother seeks.

We can not wholly follow the reasoning of the appellants that this is a private controversy between the mother and the aunt, in which the minors have no interest and in which no part of their estate may be invested. The children have a right to be with their mother and sister, and to be brought up as nature intended, as members of a united family; and if it were made to appear that such was the children's desire, and that success is fairly probable, a reasonable expenditure from the estate might be justifiable. But before any further expense is justified, all of the necessary facts must be laid before the court so that it can act intelligently; that is to say, it must appear, assuming the children to be of an age to express their preference as to their guardian, that they desire to return to their mother's care; that the decree of the Massachusetts court is attackable upon some recognized ground; that evidence exists and can be produced in Massachusetts before that court which, if believed, will render such attack successful; and that the sum sought, together with the resources of the mother which are

available, will be sufficient to adequately present the attack on the Massachusetts judgment.

None of these things appearing in the petition now before us, the order appealed from is reversed, with instructions to dismiss the petition; without prejudice, however, to further proceedings which, as indicated, may be proper.

BEALS, MILLARD, and BEELER, JJ., concur.